```
STUART HANLON, Esq. CSBN: 066104
LAW OFFICES OF STUART HANLON
179 11th Street, 2nd Floor
San Francisco, CA 94103
PH: (415) 864-5600
FAX: (415) 865-0376
Email: stuart@stuarthanlonlaw.com

Attorney for Defendant
LAUTON JOSHUA
```

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>vs.<br><br>LAUTON JOSHUA,<br><br>　　　Defendant. | No. CR-07-0555 WHA<br>**EXHIBITS IN SUPPORT OF DEFENDANT'S MEMORANDUM RE SENTENCING**<br><br>Date: May 20, 2008<br>Time: 2:00 p.m.<br>Ctrm: Hon. William H. Alsup |

Attached hereto are Exhibits in support of Defendant's Sentencing Memorandum filed herewith.

Dated: May 13, 2008

Respectfully Submitted,

s/Stuart Hanlon, CSBN: 66104
Attorney for Defendant
LAUTON JOSHUA
179 - 11th Street, 2nd Fl,
San Francisco CA 94103
415/864-5600
stuart@stuarthanlonlaw.com

# EXHIBIT A

PH06-01730I
UCCIFERRI

# MEMORANDUM OF INTERVIEW

On August 16, 2007, TONY UCCIFERRI, Administrator, SAN FRANCISCO HOUSING AUTHORITY (SFHA) – Section 8 Housing Department, San Francisco, California, telephone number 415-715-3283, was interviewed by U.S. Department of Housing and Urban Development – Office of Inspector General (HUD-OIG) Special Agent James H. Luu. The nature of the interview was to obtain information as to the SFHA's issuance and delivery of Section 8 Housing Assistance Payment (HAP) checks to the Section 8 landlords. After UCCIFERRI was apprised of the identity of the interviewing agent and the nature of the interview, UCCIFERRI voluntarily provided the following information:

> The SFHA normally generates the HAP checks on the 27th or 28th day of the month for the coming month's subsidized portion of the rent. The HAP checks are usually mailed from its main office at 440 Turk Street, San Francisco, California, by regular United States Postal Service on the 1st of the coming month to the Section 8 landlords. For example, HAP checks for September 2007 rents would be generated on August 27th or 28th and they would be sent to the landlord on September 1, 2007.
>
> The SFHA began direct deposits of HAP checks in 2006.

INTERVIEWED BY: Special Agent James H. Luu
DATE INTERVIEWED: August 16, 2007
DATE REPORTED: August 16, 2007

LJ_00923

This report is the property of the Office of Investigation. It contains neither recommendations or conclusions of the Office of Inspector General. It and its contents may not be reproduced without written permission. This report is FOR OFFICIAL USE ONLY and its disclosure to unauthorized persons is prohibited. Public availability to be determined under 5 U.S.C.§ 552.

# EXHIBIT B

## DECLARATION

I, Sara Rief, declare under penalty of perjury, as follows:

1. I am an associate for Stuart Hanlon and our office represents Ms. Wells.

2. On or about April 23, 2008, I contacted Tony Ucciferri of the San Francisco Housing Authority by both letter and telephone regarding Ms. Wells' Section 8 Housing File. I inquired whether there was a document in the file from Ms. Wells requesting she be terminated from the assistance program.

3. Following my phone call, I received a voicemail from Mr. Ucciferri stating there were not documents of this nature in the file.

4. Approximately a week later, and after speaking with my client and gaining more details, I initiated another phone conversation with Mr. Ucciferri and asked him again whether there were documents requesting termination or anything in that nature in Ms. Wells file. I was told there was not.

5. On or about May 8, 2008, I located an email in the discovery from Mr. Ucciferri to Agent James Luu where Mr. Ucciferri states "She asked to move and HAP was held." I contacted Mr. Ucciferri for further explanation on this matter.

6. On May 12, 2008, I spoke with Mr. Ucciferri. After reading the email, Mr. Ucciferri said that there must have been a request to move made by Ms. Wells or he would not have written this in his email. However, he has no independent knowledge of any details surrounding the request. Mr. Ucciferri also indicated that Maria Gonzalez, the caseworker for Ms. Wells, did not have any recollection of the details of this request.

Executed this 12th day of May, 2006 in San Francisco, California.

_____
SARA RIEF

# EXHIBIT C



"Tony Ucciferri" &lt;ucciferrit@SFHA.ORG&gt;
02/23/2007 01:42 PM

To &lt;JLuu@hudoig.gov&gt;
cc
bcc
Subject RE: LAUTON JOSHUA (Section 8 Tenant)

History: This message has been replied to

We've paid $163,660 to Helen Lowe but it goes back to 8/1/94 not 1998. From 12/98 to present was $126,934. She asked to move and HAP was held. She never came back.
Tony

**From:** JLuu@hudoig.gov [mailto:JLuu@hudoig.gov]
**Sent:** Friday, February 23, 2007 12:33 PM
**To:** Tony Ucciferri
**Subject:** RE: LAUTON JOSHUA (Section 8 Tenant)

Hi Tony,

Thanks for the update. How much have been paid to Helen Lowe since 12/1998? Any reason for the stop in payment in 11/06?

James H. Luu
Special Agent
United Department of Housing and Urban Development
Office of Inspector General, Investigations
600 Harrison Street, San Francisco, California 94107
(415) 489-6686 (Office)
(415) 489-6689 (Fax)
"Tony Ucciferri" &lt;ucciferrit@SFHA.ORG&gt;

"Tony Ucciferri" &lt;ucciferrit@SFHA.ORG&gt;

02/23/2007 11:44 AM

To&lt;JLuu@hudoig.gov&gt;

cc&lt;LChan@hudoig.gov&gt;

SubjectRE: LAUTON JOSHUA (Section 8 Tenant)

LJ_00919

Contract is still active but the last payment we made on this was 11/1/06. She has not

responded to any of our notices and is being proposed for termination.
Tony

**From:** JLuu@hudoig.gov [mailto:JLuu@hudoig.gov]
**Sent:** Thursday, February 22, 2007 3:24 PM
**To:** Tony Ucciferri
**Cc:** LChan@hudoig.gov
**Subject:** RE: LAUTON JOSHUA (Section 8 Tenant)

Hi Tony,

Hope everything is going well. Any contact from LAUTON JOSHUA??? Is she still on the program?

Can you do me a favor and provide an updated total of SFHA Section 8 payments going to landlord HELEN LOWE on behalf of LAUTON JOSHUA, from the December 12, 1998 to the present? JOSHUA is aware of HUD-OIG investigation and the matter is actually moving very quickly before the U.S. Attorney's Office, so please do not enter into any repayment on this one...Any repayment agreement would be initiated by the U.S. Attorney's Office, on behalf of HUD..


James H. Luu
Special Agent
United Department of Housing and Urban Development
Office of Inspector General, Investigations
600 Harrison Street, San Francisco, California 94107
(415) 489-6686 (Office)
(415) 489-6689 (Fax)
"Tony Ucciferri" <ucciferrit@SFHA.ORG>

"
| "Tony Ucciferri" <ucciferrit@SFHA.ORG> | To <JLuu@hudoig.gov> |
| | cc <LChan@hudoig.gov> |
| | Subject RE: LAUTON JOSHUA (Section 8 Tenant) |

LJ_00920

12/21/2006 10:15 AM

Hi James,

The file is in my office and have not received any contact to review it.

By the way, you were looking at a case for Faalua Puni and I know that if we get into a repayment agreement with the person, it harms your process. Apparently staff did execute a repayment agreement with her. Just want you to know.
Tony

**From:** JLuu@hudoig.gov [mailto:JLuu@hudoig.gov]
**Sent:** Wednesday, December 20, 2006 11:22 AM
**To:** Tony Ucciferri
**Cc:** LChan@hudoig.gov
**Subject:** LAUTON JOSHUA (Section 8 Tenant)

Tony,

As you have been apprised, the HUD-OIG is currently investigating LAUTON JOSHUA (SSN 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) for possible violations of the Section 8 program. Within the next couple of weeks, JOSHUA and/or her landlord, HELEN LOWE, might contact you or your staff about changing her Section 8 participation. Please advise us of any contact that you or your staff have received from JOSHUA or LOWE, and coordinate with us with any administrative action that you or your staff might propose. Your assistance and cooperation in this matter is imperative for the successful investigation and prosecution of these individuals. In due time, the results of this investigation

LJ_00921

# EXHIBIT D

Case Number: PH06-01730I

CID, Sacramento, California, disclosed JOSHUA has been a civilian employee of the United States Army since 1996: [Exhibits 45 – 54]

| Effective Date | Annual Base Salary |
| --- | --- |
| January 10, 2006 | $ 50,866 |
| January 9, 2005 | 48,937 |
| January 11, 2004 | 45,683 |
| January 12, 2003 | 43,362 |
| January 13, 2002 | 41,351 |
| March 30, 2001 | 38,160 |
| January 2, 2000 | 35,515 |
| January 17, 1999 | 33,636 |
| January 2, 1998 | 30,487 |
| October 31, 1996 | 27,471 |

14. Standard Form 1152, *Designation of Beneficiary*, as submitted by JOSHUA on July 22, 1986 to the USA, disclosed that LOWE is JOSHUA's grandmother. [Exhibit 55]

15. Information obtained from the FAIRFIELD SUISUN UNIFIED SCHOOL DISTRICT (FSUSD) disclosed that JOSHUA's son, TIMOTHY WELLS JR., date of birth May 22, 1996, attended public schooling in the district on a full-time basis from September 23, 2002 through May 21, 2006. WELLS JR.'s registered address was 1405 Swift Court, Suisun City, CA 94585. On May 22, 2006, WELLS JR. was removed from attendance with a notation that he was being transferred to Lincoln, California. [Exhibit 56]

16. On June 1, 2006, HUD-OIG conducted an early-morning and an afternoon surveillance of JOSHUA's Section 8 residence of 151 Margaret Avenue, San Francisco, California. Both surveillances failed to observe JOSHUA and/or her household members coming or going from the residence. The surveillances did identify two vehicles, a red Saturn sedan with California license plate 5SEJ878 and a red Ford sedan with California license plate 5SUU770, that parked in front of the residence. The vehicles are currently registered to CATHERINE LOWE at 151 Margaret Avenue, San Francisco, California. [Exhibits 57 - 59]

[Agent's Note: CATHERINE LOWE is JOSHUA's mother.] [Exhibit 55]

17. Interview of JOSHUA's neighbors in the vicinity of 1405 Swift Court, Suisun City, California, disclosed mixed results. Although the neighbors could not provide a positive identification of JOSHUA at 1405 Swift Court, they were similar in their recollection that a black family had lived at 1405 Swift Court. [Exhibits 60 – 64]

9

This report is the property of the Office of Investigations. It contains neither recommendations nor conclusions of the Office of Inspector General. It and its contents may not be reproduced without written permission. The report is FOR OFFICIAL USE ONLY and its disclosure to unauthorized persons is prohibited. Public availability to be determined under 5 U.S.C. § 552.

# EXHIBIT E

**STATEMENT OF ACCEPTANCE OF RESPONSIBILITY**

I La'uton R. Wells, wholeheartedly accept full responsibility for falsely providing information to receive funds from the Section 8 housing program. I agree that I received money that I may not have otherwise been qualified for. Despite committing this unfortunate act, I have otherwise been a good mother, an upstanding citizen, and an outstanding volunteer and role model in my community.

As I write this letter I experience feelings of disappointment, guilt, hopelessness, uncertainty and depression but I feel it is extremely important to all who is entitled to read this that I explain my intentions and reasons for my actions. More importantly to me is to explain that in providing false information to Section 8, I did not want to hurt or injure anyone. It was a means of survival. I felt that I qualified for the Section 8 program because it was designed to assist low income families; and in 1998 with an income of $26,000 and a family of four, it meant providing a roof over my family's head at a time when I could not. I was the sole provider for my two children and my husband who was not working due to an injury in 1996. My husband's disability payments had run out and he had lost the lawsuit for his injury that we had hoped would enable us to get off of the Section 8 program and buy a home. One of the main reasons I felt I qualified for Section 8 was because my husband was not working and had not been included as a family member on the Section 8 program with me. On my Section 8 voucher, I was listed as a family of three. Even though my husband did not have an income, he did not want to be added to my Section 8 program voucher because he had hopes of getting well, finding a job, and getting off of Section 8.

While on the Section 8 program I dreamed of one day getting off of the program and being able to afford a home without their assistance. My parents and my only brother were all addicted to drugs but I was determined not to follow their path. I had met many people at work and in the community who had went to college and obtained jobs where they could afford to live in San Francisco. With this in mind, I continued to work during the day while I put myself through school at night in hopes that I could establish a career and get a job where I could afford a house and living expenses for my family on my own. While working, at night I attended Heald Business College, City College of San Francisco, San Francisco State University, and the University of Phoenix, respectively.

In 1998, the opportunity to purchase a home arose when my job, the Army, offered to pay my closing costs and relocation expenses because they had moved the office to Fairfield; but on an income of $26,000 I could not afford to pay the mortgage. At the time, my mother was on social security and my brother was not working. They did not have a place to live so I allowed them to live in the house I was renting under the Section 8 program and I moved my family into the home in Suisun.

From 1998 to 2006 I continued to take care of my family of four, live in Suisun, work in Fairfield, and go to school at night in hopes of one day getting off of the Section 8 program. My husband completed vocational rehab and went to truck driving school and found a job in 2000 but soon was unable to work due to an injury and disability. I knew that with my husband out of work it was all on me; and without the assistance from Section 8 we could not afford the mortgage. So I continued my plan to go to school at night so that I could get a better job. In mid 2000, I felt all of my time and hard work was beginning to pay off. I began to explore the field of law and had decided that I wanted to go to law school. I trained at night and on weekends and subsequently volunteered as a Small Claims court Mediator for the Solano County Bar Association. I really enjoyed mediating and helping people resolve their disputes. I was able to

increase the Bar Association success rates and soon after, I was asked not only to mediate disputes in the community but also assist in training perspective members of the community to be Mediators. Also in 2000, all of my night schooling finally paid off when I received a dual BS degree in Business Administration and Management from the University of Phoenix in September 2000. I was now making $35,000, possessed a BS degree and my bi-weekly salary still could not cover the mortgage and other living expenses. With my new degree in hand, I applied to several jobs to no avail. I felt that if I could obtain an even higher level of college education I could raise out of my circumstances by getting a better paying job and get off Section 8. I had been an honor student all throughout college and I wanted to go to law school. I continued to work while I studied at night to take the law school admissions test. In October 2001, I was accepted to John F. Kennedy School of Law (JFK). Raising a family and working while going to law school, studying day and night was the hardest thing I had ever endured. In 2004, my hopes were crushed when my GPA dropped to 69.63 and I was academically disqualified. In order to remain in JFK law school you must have a 70.00. In order to fulfill my dream to get off Section 8 I continued to pursue higher education and follow my heart in volunteering in the community. While I waited for the two year mandatory waiting period to pass to reapply to law school, I enrolled in the University of Phoenix MBA program and began training as a volunteer Court Appointed Special Advocate for Children in Solano County.

From April to August 2005, I was unable to work due to depression and stress related illness. I used two weeks of vacation time and was placed on leave without pay. At that time I learned that because I was a federal employee I was unable to receive money from state disability compensation. Unable to pay my bills, I contacted Section 8 to inform them that I was not receiving any income at that time. The representative told me that I should have told her ahead of time and it was too late for them to help me.

After I returned to work at the end of 2005, our hopes of getting off of Section 8 were becoming a reality. My husband was able to find a job as a driver and we saw a home in Lincoln, CA that we thought we could afford without Section 8. Prior to purchasing the home in Lincoln, I excitedly called my Section 8 representative to inform her that I would like to be removed from the program. She informed me that I could not be removed until I provided her with a letter requesting to be removed, a forwarding address, and after I had a final inspection. Since at that time we had not purchased the home, I waited until after we purchased the home and I sent her a letter stating that I wanted to be removed from the program!

Just prior to and since this indictment, I had obtained a better position making $58,000 a year as a Legal Assistant with the Department of Justice. Due to the indictment I was only able to work there for three days and I am currently on an indefinite suspension. I was accepted to Concord University Law School online. I helped create and became an active board member for a non profit organization that provides job training, employment, and education assistance to individuals in impoverished areas of San Francisco. I have attended certification and licensure classes to open a children's Group Home.

Given my background, it is my hope that anyone who reads this can see that I am not a bad person… I am a very good person, who happened to do one bad thing. My punishment… loss of my job, my home (now in foreclosure), I was forced to file bankruptcy, and I am now facing divorce (my husband now says he wants no part of this). And what about my children? My oldest son, is attending the University of Michigan in Ann Arbor and is putting himself through school by working part time, participating in ROTC and the Army National Guard, my youngest is attending middle school and the effects remain to be seen.

Lastly, I would like to say that I am Godly sorry for engaging in this wrongful act! I have put my family, closest friends and self through undue emotional distress. I have learned during this judicial process that honesty is the only way and then we should let God take care of the rest!

Respectfully submitted,

La'uton R. Wells

Case 3:07-cr-00555-WHA    Document 18-2    Filed 05/13/2008    Page 15 of 16
Lastly, I would like to say that I am Godly sorry for engaging in this wrongful act! I have put my family, closest friends and self through undue emotional distress. I have learned during this judicial process that honesty is the only way and then we should let God take care of the rest!



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, UNITED STATES ARMY RESERVE MEDICAL COMMAND
2901 GRAND AVENUE
PINELLAS PARK FL 33782-5000

REPLY TO
ATTENTION OF

AFRC-RMC-DCR                                                                  09 May 2008

The Honorable Judge William Alsup
U.S. District Court for the Northern District of California

It is an honor and pleasure to write a character reference for Ms. La'uton Wells.

I, LTC Larry A. Greene, have known Ms. Wells for more than eight years. In addition to raising a family and being a good wife, Ms. Wells have always found the time to get involved in community life around her. Unlike many people these days, whenever she adopts a cause or pursues a new interest she is guaranteed to be highly committed.

I have always been amazed at Ms. Wells' level of patriotism, enthusiasm, and dedication to duty. Ms. Wells and I worked together from December 2000 through September 2003 at the United States Army Recruiting Command, Northern California Health Care Recruiting Team, Fairfield, CA. She had the keen responsibility of assessing and assisting with the eligibility requirements of hundreds of health care professionals annually that ensured the applicants acceptance into the United States Army Health Care Programs. Due to her high level of expertise and special skills, in support of the U.S. Army Health Care Recruiters, she also was responsible for preparing and reviewing administrative policies and for ensuring that the command's procedures for Quality Assurance were met with the highest approval.

Placing Ms. Wells in an environment with negative influences will have a negative effect. It is in the best interest of the accused and the community to serve a punishment that will not affect her educational and career path to success. Ms. Wells' character is of a dignified, trustworthy and respectable individual. I ask that you do not change the direction of her life based on a mistake.

Please send all correspondence to: LTC Larry A. Greene, 2875 87th Place # 204, Pinellas Park, FL 33782.

Sincerely,

Larry A. Greene
LTC, MS
Chief, Command Readiness Team AR-MEDCOM